UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

| | |
|---|---|
| IN RE: | : CASE NO.: 19-78138-ast |
| | : |
| | : CHAPTER: 7 |
| Tina L. Gatterdam, | : |
| | : HON. JUDGE.: |
| | : Alan S. Trust |
| Debtor. | : |
| | : HEARING DATE: |
| | : January 16, 2020 at 10:30am |
| | : |
| | : |

-----------------------------------------------------------------X

## <u>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

**PLEASE TAKE NOTICE,** that upon the application of SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust (the "Movant"), the undersigned shall move this Court for an Order, pursuant to 11 U.S.C. 362(d)(2) vacating the automatic stay to permit movant, its successors and/or assigns, to enforce its mortgage on the Debtor's premises located at 25 Green Lane, Levittown, New York 11756 and for such other and further relief as is just and proper.

This motion shall be heard at the United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722 on January 16, 2020 at 10:30am or as soon thereafter as counsel may be heard.

**[SPACE INTENTIONALLY LEFT BLANK]**

**PLEASE TAKE FURTHER NOTICE**, that answering affidavits, if any, must be served

so as to be received not later than seven (7) days before the return date of this motion.

Dated:  December 17, 2019
         Garden City, New York

                                        By: /s/ Richard Postiglione
                                        Richard Postiglione, Esq.
                                        FRIEDMAN VARTOLO LLP
                                        Attorneys for Movant
                                        Friedman Vartolo LLP
                                        1325 Franklin Avenue, Suite 230
                                        Garden City, New York 11530
                                        T: (212) 471-5100
                                        F: (212) 471-5150

TO:

Tina L. Gatterdam
2474 Wantagh Avenue
Wantagh, NY 11793
***Debtor***

William C. Gatterdam
25 Green Lane
Levittown, NY 11756
***Co-Borrower***

Amy Berkowitz-Ortiz
1225 Franklin Avenue
Suite 325
Garden City, NY 11530
***Debtors' Attorney***

R Kenneth Barnard
3305 Jerusalem Avenue
Suite 215
Wantagh, NY 11793
***Trustee***

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437
***U.S. Trustee***

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

|  |  |
|---|---|
| IN RE: | : CASE NO.: 19-78138-ast |
|  | : CHAPTER: 7 |
| Tina L. Gatterdam, | : |
|  | : HON. JUDGE.: |
|  | : Alan S. Trust |
| Debtor. | : |
|  | : HEARING DATE: |
|  | : January 16, 2020 at 10:30am |

----------------------------------------------------------------X

## <u>MOTION FOR RELIEF FROM THE</u>
## <u>AUTOMATIC STAY REGARDING REAL PROPERTY</u>

Richard Postiglione, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. 362 (d)(1) & (d)(2); for relief from the automatic stay with respect to certain real property of the Debtor having an address of 25 Green Lane, Levittown, New York 11756, (the "Property"), and for all purposes allowed by law, the Note (defined below), the Mortgage (defined below), and applicable law. In support of this Motion, Movant respectfully states:

### FACTUAL HISTORY

1.  Movant is a secured creditor of the Debtor pursuant to a Note executed by Tina L. Gatterdam (the "Debtor") and William C. Gatterdam (the "Co-Borrower") on June 9, 2005, whereby the Debtor promised to repay $320,000.00 plus interest to GreenPoint Mortgage

Funding, Inc. (the "Note"). To secure the repayment of the Note, the Debtor and Co-Borrower executed a Mortgage in favor of Mortgage Electronic Registration Systems Inc., as nominee for GreenPoint Mortgage Funding, Inc., which was recorded on July 12, 2005 in the Nassau County Clerk's Office under Liber Number M29064 from page 584 to 602 (the "Mortgage") encumbering real property located at 25 Green Lane, Levittown, New York 11756 (the "Property"). The Note and Mortgage were ultimately assigned to Movant by an assignment of mortgage recorded on April 26, 2019 (the "Assignment of Mortgage"). A copy of the Note, Mortgage, the Loan Modification Agreement and Assignments of Mortgage are attached hereto as **Exhibit A**.

2.    A Petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on December 2, 2019.

### LEGAL ARGUMENT

3.    Debtor has failed to make current mortgage payments due to Movant under the terms of the Note and Mortgage. As a result, the Mortgage remains contractually due for the June 1, 2017 payment and each subsequent payment thereafter.

4.    A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is attached hereto as **Exhibit B**.

5.    As set forth in the Affidavit, as of December 4, 2019, the outstanding amount of the Obligations less any partial payments or suspense balance is $519,978.99.

6.    Based upon the Debtors' Schedule A/B, the Property has an estimated value of approximately $347,763.00.  A copy of the Debtors' Schedule A/B is attached hereto as **Exhibit C**. The total debt due to Movant is approximately $519,978.99.  Therefore, no equity remains in the property and is not necessary for effective reorganization. Accordingly, relief from the automatic stay is also warranted under 11 U.S.C. 362(d)(2).

**WHEREFORE**, Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 USC 362(d)(1) & (2) for such other, further and different relief as to this Court may deem just, proper and equitable.

Dated: December 17, 2019
        Garden City, New York

                                    By: /s/ Richard Postiglione
                                    Richard Postiglione, Esq.
                                    FRIEDMAN VARTOLO LLP
                                    Attorneys for Movant
                                    Friedman Vartolo LLP
                                    1325 Franklin Avenue, Suite 230
                                    Garden City, New York 11530
                                    T: (212) 471-5100
                                    F: (212) 471-5150

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO.: 19-78138-ast |
|  | : |  |
|  | : | CHAPTER: 7 |
| Tina L. Gatterdam, | : |  |
|  | : | HON. JUDGE.: |
|  | : | Alan S. Trust |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

-----------------------------------------------------------------X

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

On January 16, 2020 at 10:30am, the Motion (the "Motion") of SN Servicing Corporation

as servicer for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust

("Movant"), dated December 17, 2019 came before the Court, for relief from the automatic stay

with respect to the collateral known as 25 Green Lane, Levittown, New York 11756 (the

"Collateral").  This Court, having considered the evidence presented and the arguments of the

parties, and with good cause appearing therefor, it is hereby

**ORDERED** that the automatic stay in effect pursuant to 11 U.S.C. 362(a), is

hereby terminated pursuant to 11 U.S.C. 362(d)(1) &(d)(2) as to Movant, its agents, assigns  or

successors in interest, so that Movant, its agents, assigns or successors in interest, may take any

and all action under applicable state law to exercise its remedies against the Collateral; and it is

further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Chapter 7 Trustee shall be served with a copy of the referee's report of sale within **thirty (30) days** of the report, and shall be noticed with any surplus monies realized from the sale of the Collateral; and it is further

**ORDERED** that all other relief sought in the Motion is denied.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO.: 19-78138-ast |
|  | : |  |
|  | : | CHAPTER: 7 |
| Tina L. Gatterdam, | : |  |
|  | : | HON. JUDGE.: |
|  | : | Alan S. Trust |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

------------------------------------------------------------------X

## <u>CERTIFICATE OF SERVICE</u>

On December 17, 2019, I served a true copy of the annexed **MOTION FOR RELIEF FROM STAY AND SUPPORTING PAPERS, AND PROPOSED ORDER** by mailing the same by First Class Mail in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee, and the property address as indicated on the attached Service List annexed hereto.

By:/s/ Richard Postiglione

FRIEDMAN VARTOLO LLP

1325 Franklin Avenue, Ste. 230

Garden City, New York 11530

T: (212) 471-5100

F: (212) 471-5150

### SERVICE
### LIST

Tina L. Gatterdam
2474 Wantagh Avenue
Wantagh, NY 11793
***Debtor***

William C. Gatterdam
25 Green Lane
Levittown, NY 11756
***Co-Borrower***

Amy Berkowitz-Ortiz
1225 Franklin Avenue
Suite 325
Garden City, NY 11530
***Debtors' Attorney***

R Kenneth Barnard
3305 Jerusalem Avenue
Suite 215
Wantagh, NY 11793
***Trustee***

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437
***U.S. Trustee***

# EXHIBIT A



# NOTE

| | | |
|---|---|---|
| **June 9, 2005** | **Merrick** | **NEW YORK** |
| *[Date]* | *[City]* | *[State]* |

25 Green Lane, Levittown, NY 11756
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 320,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GreenPoint Mortgage Funding, Inc.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on August, 2005. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 908, Newark, NJ 07101-0908 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,842.11.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—    Page 1 of 3
www.compliancesource.com

NYSCEF DOC. NO. 16b     3/30/2012 4:57:26 PM   PAGE   76/101     RIGHTFAX NYSCEF: 01/24/2018




5.   **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A)  **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B)  **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C)  **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D)  **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E)  **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

NISCE... CRFRDNRBS46b       3/30/2012  4:57:26 PM   PAGE   78/101   8865-250-6656EF: 01/24/2018

10.    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement.  The notice will give me at least 30 days to make the required payment.  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
William C. Gatterdam                -Borrower

_____ (Seal)
Tina L. Gatterdam                  -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*



WITHOUT RECOURSE
PAY TO THE ORDER OF:
Countrywide Document Custody Services, a division of Treasury Bank, N.A.
GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA
BY
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY
David A. Spector
Managing Director

**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 07-12-2005
Recorded Time: 10:57:30 a

    Liber Book: M 29064
    Pages From:    584
        To:    602

      Control
     Number:  963
    Ref #: CW  030645
  Doc Type: M01  MORTGAGE

Record and Return To:
GREENPOINT MORTGAGE FUNDING INC
981 AIRWAY COURT
SUITE E
SANTA ROSA, CA  95403-2049

Location:
HEMPSTEAD (2820)

| Section | Block | Lot | Unit |
|---------|-------|-----|------|
| 0051 | 00172-00 | 00014 | |

Consideration Amount:    320,000.00

              Taxes Total      3,330.00
        Recording Totals       92.00
         Total Payment    3,422.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK

After recording please return to:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

MIN:

## WORDS USED OFTEN IN THIS DOCUMENT

(A)    "Security Instrument." This document, which is dated June 9, 2005, together with all Riders to this document, will be called the "Security Instrument."

(B)    "Borrower." William C. Gatterdam and Tina L. Gatterdam , whose address is 25 Green Lane, Levittown, NY 11756 USA sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.    FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD,

(D)    "Lender." GreenPoint Mortgage Funding, Inc. will be called "Lender." Lender is a corporation or association which exists under the laws of the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945.

(E)    "Note." The note signed by Borrower and dated June 9, 2005, will be called the "Note." The Note shows that I owe Lender Three Hundred Twenty Thousand  and 00/100ths Dollars (U.S. $320,000.00) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by July 1, 2035.

(F)    "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."



RECEIVED IN
THIS CONDITION

Issued on behalf of:
LB-Chicago Title Insurance Company, Inc.

**AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92)**
**WITH NEW YORK COVERAGE ENDORSEMENT APPENDED (A.L.T.A.)**

POLICY NO: ███████

## SCHEDULE A

District:   Section: 51  Block: 172  Lot: 14

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bethpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948. Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map no. 4555, bounded and described as follows:

BEGINNING at a point on the northerly side of Green Lane, distant 461.00 feet easterly from the corner formed by the intersection of the northerly side of Green Lane with the easterly side of Cooper Lane;

Running thence northerly at right angles to Green Lane, 100.00 feet;

Thence easterly parallel with Green Lane, 60.00 feet;

Thence southerly again at right angles to Green Lane, 100.00 feet to the northerly side of Green Lane;

Thence westerly along the northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Said premises being known as and by the street address:
25 Green Lane, Levittown, NY 11756

This policy valid only if Schedule B is attached

**(G)** **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I)** **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) [specify] See attached legal description | | |

**(J)** **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)** **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)** **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N)** **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 25 Green Lane
                                                    *[Street]*
Levittown                         , New York  11756               . This Property is in
      *[City, Town or Village]*                     *[Zip Code]*
Nassau County. It has the following legal description:

As more particularly described in exhibit "A" attached hereto and made a part hereof.

PREMISES IS OR WILL BE
IMPROVED BY A ONE OR TWO
FAMILY DWELLING

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.
I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:
   1.   **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.
   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any

prepayment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**
(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
    (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
    (2) The leasehold payments or ground rents on the Property (if any);
    (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
    (4) The premium for Mortgage Insurance (if any);
    (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
    (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3033 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 5 of 17
www.compliancesource.com

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b)  Lender's Obligations.**  Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c)  Adjustments to the Escrow Funds.**  Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 26.

---

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.    **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.    **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and

renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)  **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of

Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(h) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.  Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.  Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to:  (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender every 14 days an amount equal to one-twenty-sixth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time, and may enter into agreements with other parties that share or change their risk, or reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to (a) receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be

lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full. The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS Modified Form 3033 01/01
—THE COMPLIANCE SOURCE, INC.—    Page 11 of 17
www.compliancesource.com

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions

of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer

unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat or release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property** [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 16 of this Security Instrument and in any rider signed by me and recorded with it.

Witnesses:

_____    _____ (Seal)
                              William C. Gatterdam         -Borrower

_____    _____ (Seal)
                              Tina L. Gatterdam            -Borrower

                              _____ (Seal)
                                                           -Borrower

                              _____ (Seal)
                                                           -Borrower

_____ [Acknowledgment on Following Page] _____

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3033  01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 16 of 17

State of *New York*

County of *Nassau*

§
§ ss:
§

On the *9* day of *June* in the year *2005* before me, the undersigned, personally appeared William C. Gatterdam and Tina L. Gatterdam

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

(Seal)

Signature _____

Office _____

FREDERICK A. FRIEDMAN
Notary Public, State Of New York
No. 02FR6003055
Qualified In Nassau County
Commission Expires On 2/23/20__

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 17 of 17

MERS Modified Form 3033 01/01

NC CLERK



**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 06-06-2012          Record and Return To:
Recorded Time:  2:30:45 p          CORELOGIC
                                   ATTN RELEASE DEPT
     Liber Book: M  37315          450 E BOUNDARY STREET
     Pages From:     437           CHAPIN, SC  29036
            To:      439

        Control
        Number:  2052
        Ref #:
        Doc Type: M23  ASSIGN MORTGAGE

     Refers to: Book: M 29064 Page: 584

Location:                  Section Block    Lot     Unit
HEMPSTEAD (2820)           0051    00172-00 00014

                              Taxes Total          .00
                          Recording Totals       130.00
KHC001                       Total Payment       130.00

    THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                          MAUREEN O'CONNELL
                            COUNTY CLERK

NC CLERK

Recording Requested By:
Bank of America

Prepared By: Diana DeAvila
888-603-9011
When recorded mail to.
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address·
25 Green Ln
Levittown, NY 11756-4004
Property Location:
Township of HEMPSTEAD

MIN #·                                    This space for Recorder's use

                                          MERS Phone #· 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
GREENPOINT MORTGAGE FUNDING, INC.#
, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 3300 S.W. 34th
Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF
AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 13150 WORLD GATE DR,
HERNDON, VA 20170 all beneficial interest under that certain security instrument described below together with
the note(s) and obligations therein described and the money due and to become due thereon with interest and all
rights accrued or to accrue under said security instrument.

Original Lender:           MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                           NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.
Made By:                   WILLIAM C. GATTERDAM AND TINA L. GATTERDAM
Date of Mortgage.          6/9/2005
Original Loan Amount:      $320,000.00
Section: 0051    Lot: 00014    Block: 00172-00    Unit: NA

Recorded in Nassau County, NY on· 7/12/2005, book M 29064, page 584 and instrument number 2005071200963

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
NOV 2 8 2011

* 100 Wood Hollow Drive        MORTGAGE ELECTRONIC REGISTRATION
  Novato, CA 94945             SYSTEMS, INC., AS NOMINEE FOR GREENPOINT
  Novato, CA 94945             MORTGAGE FUNDING, INC.

                               By

                               Barbara Nord Assistant Secretary

NC CLERK

State of California
County of Ventura

On NOV 29 2011 before me, _____ L A Llanos _____, Notary Public, personally
appeared _____ Barbara Nord _____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____ L C C _____

Notary Public: _____ L A Llanos _____                    (Seal)
My Commission Expires: _____ 1-14-15 _____

L A LLANOS
Commission # 1921705
Notary Public - California
Los Angeles County
My Comm. Expires Jan 14, 2015

DocID#  ██████████████

NC CLERK



**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 01-08-2014
Recorded Time:  9:52:47 a

Record and Return To:
BERKMAN HENOCH PETERSON PEDDY &
FENCHEL PC

Liber Book: M  39437
Pages From:      455
           To:      457

100 GARDEN CITY PLAZA
GARDEN CITY, NY  11530

Control
Number:   390
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M 29064 Page: 584

Location:
HEMPSTEAD (2820)

Section  Block     Lot     Unit
0051     00172-00  00014

| | | |
|---|---|---|
| Taxes Total | | .00 |
| Recording Totals | | 205.00 |
| Total Payment | | 205.00 |

CHK001

**THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED**
**MAUREEN O'CONNELL**
**COUNTY CLERK**

NC CLERK

BERKMAN, HENOCH, PETERSON, PEDDY & FENCHEL, P.C.
100 GARDEN CITY PLAZA
GARDEN CITY, NY 11530

Recording Requested By:
Bank of America
1800 Tapo Canyon Road
Simi Valley, CA 93063
Prepared By: Noor Sadruddin

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Property Address:
25 Green Ln
Levittown, NY 11756-4004
Property Location:
Township of HEMPSTEAD

*This space for Recorder's use*

## ASSIGNMENT OF MORTGAGE

For Value Received, Bank of America, N.A., the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto GREEN TREE SERVICING LLC whose address is 7360 S. KYRENE ROAD, TEMPE, AZ 85283 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Original Lender:        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.
Made By:               WILLIAM C. GATTERDAM AND TINA L. GATTERDAM
Date of Mortgage:      6/9/2005
Original Loan Amount:  $320,800.00
Section: 0051    Lot: 00014    Block: 00172-09    Unit: NA
Recorded in Nassau County, NY on: 7/12/2005, book M 29664, page 584 and instrument number 2005071200963
This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below: MERS for GreenPoint Mortgage Funding to Bank of America, NA recorded 6/06/12 Liber 37315 Page 437.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated: 6/17/13

Bank of America, N.A.

By: _Nicholas A. Donahin_
Nicholas A. Donahin
Assistant Vice President

State of TX, County of Dallas

On JUN 1 7 2013 before me, MiChong Keys a Notary Public, personally appeared Nicholas A. Donahin Assistant Vice President of Bank of America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: MiChong Keys
My Commission Expires: 8/13/2015

MICHONG KEYS
Notary Public, State of Texas
My Commission Expires
08/13/2015

NC CLERK

**ADVANTAGE FORECLOSURE SERVICES, INC.**

Title No. ███████████ (File No. ███████████

**SCHEDULE A**
**DESCRIPTION**

<u>Section 51, Block 172 and Lot 14</u>

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bethpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948, Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map No. 4555, bounded and described as follows:

BEGINNING at a point on the Northerly side of Green Lane, distant 461.00 feet Easterly from the corner formed by the intersection of the Northerly side of Green Lane with the Easterly side of Cooper Lane;

RUNNING THENCE Northerly at right angles to Green Lane, 100.00 feet;

THENCE Easterly parallel with Green Lane, 60.00 feet;

THENCE Southerly again at right angles to Green Lane, 100.00 feet to the Northerly side of Green Lane;

THENCE Westerly along the Northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Premises known as 25 Green Lane, Levittown, New York

# **** Electronically Filed Document ****

Instrument Number: 2016-83021

Recorded As:    EX-M01 – MORTGAGE

Recorded On:    August 26, 2016

Recorded At:    09:23:48 am            Receipt Number:    372064

Number of Pages:    12                 Processed By:      001 DAC

Book-VI/Pg:    Bk-M  VI-41462  Pg-423

Total Rec Fee(s):    $1,922.25

** Examined and Charged as Follows **

| 01 - MORTGAGE | $ 100.00 | EX-AFT - AFFIDAVIT | $ 5.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |

| | Tax Amount | Consid Amt | RS#/CS# | | |
|---|---|---|---|---|---|
| Tax-Mortgage HEMPSTEAD | $ 1517.25 | $ 144505.31 | DH 17935 | Basic | $ 722.50 |
| | | | | Local NY CITY | $ 0.00 |
| | | | | Additional MTA | $ 433.50 |
| | | | | Spec ASST | $ 361.25 |
| | | | | Spec ADDL SONYMA | $ 0.00 |
| | | | | Transfer | $ 0.00 |

Tax Charge:            $ 1517.25

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 51 | 172 | 14 | | HEMPSTEAD |

### ***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

Imb Tracking Number: ██████████

Investor Account # ██████████

When Recorded, Return to:
Ditech Financial LLC
7360 South Kyrene Road T214
Tempe, AZ 85283

This document was prepared by Ditech Financial LLC

_____ [Space above This Line for Recording Data] _____

Customer(s)[1]: TINA L. GATTERDAM and WILLIAM C. GATTERDAM 25 Green Ln., Levittown, NY 11756
Lender/Servicer ("Lender"): Ditech Financial LLC 7360 S. Kyrene Rd. Tempe, AZ 85283
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 06/09/2005
Account Number: 0038141420 Recorded 07/12/2005 Book M29064 Page 584 Original Mortgage Amt $320,000.00
Original Mortgagee Mers as nominee for GreenPoint Mortgage Funding, Inc. New Modified Amt $439,955.73 Unpaid
Principal Balance $295,450.42 New Money $144,505.31 MIN: 100013800868694353
Property Address ("Property"): 25 GREEN LN, LEVITTOWN, NY 11756**

**IF YOU ARE IN BANKRUPTCY OR IF YOUR OBLIGATION TO REPAY THIS ACCOUNT WAS DISCHARGED IN
BANKRUPTCY, THIS NOTICE IS INFORMATIONAL ONLY. IT IS NOT AN ATTEMPT TO COLLECT THE DEBT. YOU
MAY DISREGARD INFORMATION PERTAINING TO PAYMENT REMITTANCE. YOU ARE NOT OBLIGATED TO MAKE
PAYMENTS AND ANY AMOUNT(S) YOU DO PAY DITECH IS AT YOUR DISCRETION.**

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this 30th day of June, 2016, between the Lender and Customer, amends
and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards
Rider, if any, dated 06/09/2005 and recorded in Book or Liber M 29064, at page(s) 584, and/or Document
#2005071200963 of Clerk'          Records of Nassau County
the _____                Nassau New York
        (Name of Records)              (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal
property described in the Security Instrument and defined therein as the "Property", located at
                            25 GREEN LN, LEVITTOWN, NY 11756
                                    (Property Address)

the real property described in the above-referenced Security Instrument.

   In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of 06/01/2016, the amount payable under the Note and the Security Instrument (the "New Principal Balance")
     is U.S. $439,955.73 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and
     other amounts capitalized.

**Assigned from Mers as nominee for GreenPoint Mortgage Funding, Inc. to Bank of America, N.A. Successor by merger to BAC
Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP recorded 06/06/2012 Book M37315 Page 437. Assigned
from Bank of America, N.A. to Green Tree Servicing, LLC recorded 01/08/2014 Book M39437 Page 455.

PBK

2.   $60,225.73 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Customer will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $379,730.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.000%, from 06/01/2016. Customer promises to make monthly payments of principal and interest of U.S. $1,587.04, beginning on the 07/01/2016, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 06/01/2056. Customer's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 40 | 4.000% | 06/01/2016 | $1,587.04 | $891.11, may adjust periodically | $2,478.15, may adjust periodically | 07/01/2016 | 480 |

3.   Customer agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Customer sells or transfers an interest in the Property, (ii) the date Customer pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.   If Customer makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.   If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

Customer understands and agrees that:

(a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any

property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Customer acknowledges that Lender is required to report any debt forgiveness to the Internal Revenue Service which may result in consequences regarding Customer's federal, state or local tax liability. In addition, Customer understands that if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Customer acknowledges that Lender cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. Customer further acknowledges that Lender has advised that Customer may wish to consult with a tax professional about any possible tax consequences and/or their public assistance office regarding other consequences that may result from the forgiveness of debt.

(f)    Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g)    Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

6.    By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to

be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

7.   Notwithstanding anything to the contrary contained in this Agreement, Customer and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Customer prior to the execution of this Agreement and that Lender may not pursue Customer for personal liability. However, Customer acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument

Imb Tracking Number: █████████████

Instrument as a result of Customer's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Customer personally or an attempt to revive personal liability.

8.  Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

9.  Customer understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

PBK

███████

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument



Imb Tracking Number: ▮▮▮▮▮▮▮▮▮▮

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC FKA Green Tree Servicing, LLC
Lender

By: _____

Date 7/6/16

Jeff D. Koenig
Director of Default Services

WILLIAM C. GATTERDAM

Date 6/30/16

TINA L. GATTERDAM

Date 6/30/16

[Space Below This Line For Acknowledgments]

PBK

LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae Uniform Instrument

STATE OF: NEW YORK,                    *Nassau*        County ss:

On the __30__ day of __June__ , 20_16_ before me,   the undersigned, a notary
public in and for said state, personally appeared

### WILLIAM C. GATTERDAM and TINA L. GATTERDAM

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.

_____
Notary Public

TINA M DONDS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DO6145217
Qualified in Nassau County
My Commission Expires May 01, 2018

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

ACKNOWLEDGMENT

STATE OF: Arizona,

County ss: Maricopa,

On this day of _____ JUL 0 6 2016 _____, before me, the undersigned, a Notary Public in and for said state, personally appeared

Jeff D. Koenig, Licensed Default Services Director of Ditech Financial LLC

*Personally known to me* or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and at by his/her/their signature(s) on the instrument, the individual(s), or the person upon beh     of which the individual(s) acted, executed the instrument.

_____
Notary Public.

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
Fred Lenz
Commission #156645
My Commission Expires April 14, 2019

## EXHIBIT "A"

__Section 51, Block 172 and Lot 14__

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bethpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948, Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map No. 4555, bounded and described as follows:

BEGINNING at a point on the Northerly side of Green Lane, distant 461.00 feet Easterly from the corner formed by the intersection of the Northerly side of Green Lane with the Easterly side of Cooper Lane;

RUNNING THENCE Northerly at right angles to Green Lane, 100.00 feet;

THENCE Easterly parallel with Green Lane, 60.00 feet;

THENCE Southerly again at right angles to Green Lane, 100.00 feet to the Northerly side of Green Lane;

THENCE Westerly along the Northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Premises known as 25 Green Lane, Levittown, New York

This property is or will be improved by a one or two family residence or dwelling.

**Schedule of Mortgages**

**Exhibit B**

This Home Affordable Modification Agreement dated 06/30/2016 between Tina L. Gatterdam and William C. Gatterdam, borrower, and Ditech Financial LLC fka Green Tree Servicing, LLC modifies the following document:

1. That a Mortgage dated 06/09/2005, made by Tina L. Gatterdam and William C. Gatterdam in favor of Mers as nominee for GreenPoint Mortgage Funding, Inc. in the amount of $320,000.00 and recorded on 07/12/2005 Book M29064 Page 584 in the County of Nassau Records at which time mortgage tax in the amount of $3,330.00 was duly paid. The pre-modification unpaid principal balance is: $295,450.42. Assigned from Mers as nominee for GreenPoint Mortgage Funding, Inc. to Bank of America, N.A. Successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP recorded 06/06/2012 Book M37315 Page 437. Assigned from Bank of America, N.A. to Green Tree Servicing, LLC recorded 01/08/2014 Book M39437 Page 455.

2. The above Mortgage is being modified by a Home Affordable Modification Agreement and the new modified principal balance is $439,955.73, which consists of the unpaid amounts loaned to borrower by lender, plus all interest and other amounts capitalized to date. The Loan Modification Agreement, dated 06/30/2016, is between Tina L. Gatterdam and William C. Gatterdam and Ditech Financial LLC fka Green Tree Servicing, LLC ("Lender") and is to be recorded concurrently herewith this affidavit.

3. The said Modification Agreement is given solely for the purpose of further securing, extending, and/or modifying the same principal indebtedness which is, or under any contingency, may be secured by said Mortgage (described in paragraph 1). The total modified mortgage amount is now $439,955.73. The Modification Agreement has capitalized interest and other charges in the form of new principal in the amount of $144,505.31. Thus the mortgage tax is due solely on the new capitalized principal in the amount of $144,505.31. Thus, the Mortgage Tax in the amount of $1,517.25 is due solely on the new capitalized principal.

## SECTION 255 AFFIDAVIT

Ditech Financial LLC fka Green Tree Servicing, LLC ("Mortgagee"), being duly sworn, deposes and says that: Ditech Financial LLC fka Green Tree Servicing, LLC is the Mortgagee or Nominee of Lender of the hereinafter described mortgage, concerning the property located at: 25 Green Ln., Levittown, NY 11756 Section 51 Block 172 Lot 14 and is familiar with the facts and circumstances set forth herein.

1. That a Mortgage dated 06/09/2005, made by Tina L. Gatterdam and William C. Gatterdam in favor of Mers as nominee for GreenPoint Mortgage Funding, Inc. in the amount of $320,000.00 and recorded on 07/12/2005 Book M29064 Page 584 in the County of Nassau Records at which time mortgage tax in the amount of $3,330.00 was duly paid. The pre-modification unpaid principal balance is: $295,450.42. Assigned from Mers as nominee for GreenPoint Mortgage Funding, Inc. to Bank of America, N.A. Successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP recorded 06/06/2012 Book M37315 Page 437. Assigned from Bank of America, N.A. to Green Tree Servicing, LLC recorded 01/08/2014 Book M39437 Page 455.

2. The above Mortgage is being modified by a Home Affordable Modification Agreement and the new modified principal balance is $439,955.73, which consists of the unpaid amounts loaned to borrower by lender, plus all interest and other amounts capitalized to date. The Loan Modification Agreement, dated 06/30/2016, is between Tina L. Gatterdam and William C. Gatterdam and Ditech Financial LLC fka Green Tree Servicing, LLC ("Lender") and is to be recorded concurrently herewith this affidavit.

3. The said Modification Agreement is given solely for the purpose of further securing, extending, and/or modifying the same principal indebtedness which is, or under any contingency, may be secured by said Mortgage (described in paragraph 1). The total modified mortgage amount is now $439,955.73. The Modification Agreement has capitalized interest and other charges in the form of new principal in the amount of $144,505.31. Thus the mortgage tax is due solely on the new capitalized principal in the amount of $144,505.31. Thus, the Mortgage Tax in the amount of $1,517.25 is due solely on the new capitalized principal.

Wherefore, affiant respectively requests that the Loan Modification Agreement tendered herewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the state of New York.

Ditech Financial LLC fka Green Tree Servicing, LLC

By: _____

Date: __7/6/16__

Jeff D. Koenig
Director of Default Services

JUL 0 6 2016

Sworn to before me on this ____ day of _____, 20____

_Fred Lenz_
Notary Public

NOTARY PUBLIC
STATE OF ARIZONA
Fred Lenz
Commission
My Commission Expires April 14, 2019

# **** Electronically Filed Document ****

| | |
|---|---|
| Instrument Number: | 2016-86910 |
| Recorded As: | EX-M23 - ASSIGN MORT |
| Recorded On: | September 07, 2016 |
| Recorded At: | 10:58:58 am |
| Number of Pages: | 4 |
| Book-VI/Pg: | Bk-M  VI-41487  Pg-503 |
| Total Rec Fee(s): | $360.00 |

| | |
|---|---|
| Receipt Number: | 383168 |
| Processed By: | 001 CI |

** Examined and Charged as Follows **

| 23 - ASSIGN MORTGAGE | $ 60.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |
|---|---|---|---|

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 51 | 172 | 14 | | HEMPSTEAD |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell

**County Clerk Maureen O'Connell**

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Section: 51 Lot: 14 Block: 172-00
Loan No: ▮▮▮▮▮▮
Svcr Ln No: ▮▮▮▮▮▮
GS ID: ▮▮▮▮▮▮

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC,** whose address is **1100 LANDMARK TOWERS, 345 ST. PETER STREET, ST. PAUL, MN 55102,** (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.,** whose address is **6011 CONNECTION DRIVE, 5TH FLOOR, IRVING TX, 75039,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **6/9/2005**
Original Loan Amount: **$320,000.00**
Executed by (Borrower(s)): **WILLIAM C. GATTERDAM AND TINA L. GATTERDAM**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume M 29064, Page 584-602,
Document/Instrument No: 2005071200963 in the Office of County Recorder of NASSAU County, NY, Recorded on 7/12/2005.

Legal Description:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **25 GREEN LANE, LEVITTOWN, NEW YORK 11756**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **AUG 1 7 2016**

DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT

By: JAMES W MOFFETT
Title: VICE PRESIDENT

Witness Name: **Huy Pham**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of          **TEXAS**
County of        **DALLAS**

On **AUG 1 7 2016**, before me, Deb McMurtre, a Notary Public, personally appeared JAMES W MOFFETT, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct. I further certify JAMES W MOFFETT, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of DALLAS, State of TEXAS.

Witness my hand and official seal.

(Notary Name): Deb McMurtre
My commission expires: 9·20·17

DEB MCMURTRE
Notary Public, State of Texas
Comm. Expires 09-20-2017
Notary ID 125438276

## EXHIBIT "A"

District:  Section: 51 Block: 172 Lot: 14

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bethpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948, Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map no. 4655, bounded and described as follows:

BEGINNING at a point on the northerly side of Green Lane, distant 461.00 feet easterly from the corner formed by the intersection of the northerly side of Green Lane with the easterly side of Cooper Lane;

Running thence northerly at right angles to Green Lane, 100.00 feet;

Thence easterly parallel with Green Lane, 60.00 feet;

Thence southerly again at right angles to Green Lane, 100.00 feet to the northerly side of Green Lane;

Thence westerly along the northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Said premises being known as and by the street address:
25 Green Lane, Levittown, NY 11756

## Assignment Chain

| | |
|---|---|
| Mortgage Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| Borrower: | WILLIAM C. GATTERDAM AND TINA L. GATTERDAM |
| Amount: | $320,000.00 |
| Recorded: | DATE: 06/09/2005; RECORDED: 07/12/2005; INST#: 2005071200963; BK/PG#: M 29064/584 |
| | |
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| To: | BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP |
| Recorded: | DATE: 11/29/2011; RECORDED: 06/06/2012; BK/PG: M 37315/437; INST# 2012060602052 |
| | |
| Assigned From: | BANK OF AMERICA, N.A. |
| To: | GREEN TREE SERVICING, LLC |
| Recorded: | DATE: 6/17/2013; RECORDED: 01/08/2014; BK/PG: M39437/455; INST# 2014010800390 |
| | |
| Assigned From: | DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC |
| To: | MTGLQ INVESTORS, LP |
| Recorded: | To be recorded concurrently herewith |

███████████████████

# **** Electronically Filed Document ****

| | |
|---|---|
| Instrument Number: | 2019-7144 |
| Recorded As: | EX-M23 - ASSIGN MORT |
| Recorded On: | January 23, 2019 |
| Recorded At: | 09:48:38 am |
| Number of Pages: | 5 |
| Book-VI/Pg: | Bk-M  VI-43262  Pg-936 |
| Total Rec Fee(s): | $365.00 |

| | |
|---|---|
| Receipt Number: | 1345673 |
| Processed By: | 001 KS |

**\*\* Examined and Charged as Follows \*\***

| | | | |
|---|---|---|---|
| 23 - ASSIGN MORTGAGE | $ 65.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 51 | 172 | 14 | | HEMPSTEAD |

---

# \*\*\*\*\*\*\*\*\*\*\*\*THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

Recording Requested By:

Prepared By: Audrey B Trumble
855-369-2410
When recorded mail to:

_____

Case Nbr: ███████████
Ref Number: ███████
Property Address:
25 GREEN LANE
LEVITTOWN, NY 11756
Property Location:
Township of HEMPSTEAD ███████

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, MTGLQ INVESTORS, L.P., the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Mortgagee:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                    NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS
                    SUCCESSORS AND ASSIGNS
Made By:            WILLIAM C. GATTERDAM AND TINA L. GATTERDAM
Date of Mortgage:   6/9/2005                          **SEE EXHIBIT "A" ATTACHED**
Original Loan Amount: $320,000.00
Section: 51    Lot: 14    Block: 172    ~Municipality: Town of HEMPSTEAD

Recorded in Nassau County, NY on: 7/12/2005, book M 29064, page 584 and instrument number 2005071200963

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
_____DEC 1 9 2019_____

                              MTGLQ INVESTORS, L.P.

                              By: _____
                              Jenny Lay, Vice President

STATE OF TX
County of Dallas

On the _____ day of **DEC 1 9 2018** _____, in the year 20 _____, before me the undersigned, personally appeared Jenny Lay, Vice President for MTGLQ INVESTORS, L.P. personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that (he)(she)(they) executed the same in (his)(her)(their) capacity(y)(ies), and that by (his)(her) (their) signature(s) on the instrument. the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the _____ DALLAS TEXAS _____ (add the city or political subdivision and the state or country or other place the acknowledgement was taken).

Notary Public JENNIFER LYNNE CARY

Jennifer Lynne Cary
My Commission Expires
11/28/2022
ID No. 130032409

## EXHIBIT "A"

District:  Section: 51  Block: 172  Lot: 14

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bellpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948, Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map no. 4555, bounded and described as follows:

BEGINNING at a point on the northerly side of Green Lane, distant 461.00 feet easterly from the corner formed by the intersection of the northerly side of Green Lane with the easterly side of Cooper Lane;

Running thence northerly at right angles to Green Lane, 100.00 feet;

Thence easterly parallel with Green Lane, 60.00 feet;

Thence southerly again at right angles to Green Lane, 100.00 feet to the northerly side of Green Lane;

Thence westerly along the northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Said premises being known as and by the street address:
25 Green Lane, Levittown, NY 11756

## Assignment Chain

**Mortgage**

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| Borrower: | WILLIAM C. GATTERDAM AND TINA L. GATTERDAM |
| Origination Balance: | $320,000.00 |
| Origination Date: | 06/09/2005 |
| Recording Date: | 07/12/2005 |
| Mortgage Recording Details: | Book: M 29064; Page: 584; Instrument: 2005071200963 MUNICIPALITY: TOWN OF HEMPSTEAD |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| To: | BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP |
| AOM Dated: | 11/29/2011 |
| AOM Recorded: | 06/06/2012 |
| AOM Recording Details: | Book: M 37315; Page: 437; DocumentNo: 2012060602052 |

| | |
|---|---|
| Assigned From: | BANK OF AMERICA, N.A. |
| To: | GREEN TREE SERVICING, LLC |
| AOM Dated: | 06/17/2013 |
| AOM Recorded: | 01/08/2014 |
| AOM Recording Details: | Book: M 39437; Page: 455; DocumentNo: 2014010800390 |

| | |
|---|---|
| Assigned From: | DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC |
| To: | MTGLQ INVESTORS, LP |
| AOM Dated: | 08/17/2016 |

AOM Recorded:        09/07/2016

AOM Recording       Book: M 41487; Page: 503; DocumentNo: 2016-86910
Details:

## **** Electronically Filed Document ****

Instrument Number:  2019-35657

Recorded As:   EX-M23 - ASSIGN MORT

Recorded On:   April 26, 2019

Recorded At:   03:48:09 pm                Receipt Number:   1458342

Number of Pages:  5                       Processed By:   001 KS

Book-VI/Pg:   Bk-M  VI-43412  Pg-664

Total Rec Fee(s):   $368.00

**\*\* Examined and Charged as Follows \*\***

| 23 - ASSIGN MORTGAGE | $ 65.00 | EX-ANREF Addit Mtg Ref 3.0 | $ 3.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 51 | 172 | 14 | | HEMPSTEAD |

---

### \*\*\*\*\*\*\*\*\*\*\*\*THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Section: 51 Lot: 14 Block: 172
Loan No: ███████

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/9/2005
Original Loan Amount: $320,000.00
Executed by (Borrower(s)): WILLIAM C GATTERDAM & TINA L. GATTERDAM
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book/Liber/Volume M 29064, Page 584,
Document/Instrument No: 2005071200963; REF#: CW 030645 in the Recording District of NASSAU, NY, Recorded on 7/12/2005. MUNICIPALITY: TOWN OF HEMPSTEAD

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 25 GREEN LANE, LEVITTOWN, NEW YORK 11756

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **MAR 2 2 2019**

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: DANIEL SLEDD

Title: **VICE PRESIDENT**

Witness Name: **DONRAO BOWENS**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of  **FLORIDA**
County of  **PINELLAS**

On **MAR 2 2 2019** , before me, **JULIE ARENCIBIA**, a Notary Public, personally appeared **DANIEL SLEDD, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify **DANIEL SLEDD**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA**.

Witness my hand and official seal.

(Notary Name): **JULIE ARENCIBIA**
My commission expires: 7/18/2022

**JULIE ARENCIBIA**
Commission # GG 197807
Expires July 18, 2022
Bonded Thru Budget Notary Services

## EXHIBIT "A"

District:  Section: 51  Block: 172  Lot: 14

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Levittown, Town of Hempstead, County of Nassau and State of New York, known and designated as and by the Lot No. 14, Block 172, on a certain map entitled, "Section Q of Subdivision Map of Property known as Levittown, owned by Bethpage Realty Corp., located at Hicksville, Town of Hempstead, Nassau Co., N.Y., May 1948, Survey and Maps by C.A. Monroe, P.E. & L.S." and filed in the Office of the Clerk of the County of Nassau on June 24, 1948 as Map no. 4555, bounded and described as follows:

BEGINNING at a point on the northerly side of Green Lane, distant 461.00 feet easterly from the corner formed by the intersection of the northerly side of Green Lane with the easterly side of Cooper Lane;

Running thence northerly at right angles to Green Lane, 100.00 feet;

Thence easterly parallel with Green Lane, 60.00 feet;

Thence southerly again at right angles to Green Lane, 100.00 feet to the northerly side of Green Lane;

Thence westerly along the northerly side of Green Lane, 60.00 feet to the point or place of BEGINNING.

Said premises being known as and by the street address:
25 Green Lane, Levittown, NY 11756

## Assignment Chain

**Mortgage**

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| Borrower: | WILLIAM C GATTERDAM & TINA L. GATTERDAM |
| Origination Balance: | $320,000.00 |
| Origination Date: | 06/09/2005 |
| Recording Date: | 07/12/2005 |
| Mortgage Recording Details: | Book: M 29064; Page: 584; Instrument: 2005071200963; REF#: CW 030645 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS |
| To: | BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP |
| AOM Dated: | 11/29/2011 |
| AOM Recorded: | 06/06/2012 |
| AOM Recording Details: | Book: M37315; Page: 437; DocumentNo: 2012060602052 |

| | |
|---|---|
| Assigned From: | BANK OF AMERICA, N.A. |
| To: | GREEN TREE SERVICING LLC |
| AOM Dated: | 06/17/2013 |
| AOM Recorded: | 01/08/2014 |
| AOM Recording Details: | Book: M 39437; Page: 455; DocumentNo: 2014010800390 |

MODIFICATION
LENDER: DITECH FINANCIAL
BORROWER: WILLIAM C GATTERDAM & TINA L. GATTERDAM
DATE: 06/30/2016
RECORDING DATE: 08/26/2016
BK/PG/INSTR#: M41462/423/2016-83021
NEW MONEY AMOUNT: $144,505.31
BALANCE: $439,955.73

| | |
|---|---|
| Assigned From: | DITECH FINANCIAL, LLC, SUCCESSOR BY MERGER TO GREEN TREE SERVICING, LLC |
| To: | MTGLQ INVESTORS, L.P. |
| AOM Dated: | 08/17/2016 |
| AOM Recorded: | 09/07/2016 |
| AOM Recording Details: | Book: M 41487; Page: 503; DocumentNo: 2016-86910 |

| | |
|---|---|
| Assigned From: | MTGLQ INVESTORS, L.P. |
| To: | U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST |
| AOM Dated: | 12/19/2018 |
| AOM Recorded: | 01/23/2019 |
| AOM Recording Details: | Book: N/A; Page: 7144; DocumentNo: 43262 |

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

In re:                                                                    CASE NO. 19-78138-ast

Tina L. Gatterdam,

                                                                            CHAPTER 7

                        Debtor.
-------------------------------------------------------------X

---

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

---

## BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: <u>25 Green Lane, Levittown, New York 11756</u>

2. LENDER NAME: <u>U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust</u>

3. MORTGAGE DATE: <u>June 9, 2005</u>

4. POST-PETITION PAYMENT ADDRESS:
    SN Servicing Corporation
    323 Fifth Street
    Eureka, CA 95501

## DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: <u>$519,978.99 as of 12/4/19</u>
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $<u>347,763.00</u>

7. SOURCE OF ESTIMATED MARKET VALUE: <u>Debtor's Schedule A/B</u>

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE: *as of 12/4/19

      A. TOTAL: <u>$519,978.99</u>

      B. PRINCIPAL: <u>$376,136.51</u>

      C. INTEREST: <u>$38,991.15</u>

      D. ESCROW (TAXES AND INSURANCE): <u>$28,737.62</u>

      E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: <u>$0.00</u>

      F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): <u>$0.00</u>

      G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): <u>$0.00</u>

9. CONTRACT INTEREST RATE: <u>4.000%</u>
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  __.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: <u>Late Charge: $507.84; Attorney Fees: $2,440.00; Corporate Advance: $12,405.20; Forbearance Principal: $60,225.73; Foreclosure Expense: $534.94</u>

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: <u>No Post-Petition Payments Received</u>

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: <u>0</u>

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| | $0.00 | $0.00 | | | | |
| TOTAL: | $0.00 | $0.00 | $ | $ | $ | $ |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

      A. TOTAL:         $0.00

      B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:   $0.00

      C. FILING FEE IN CONNECTION WITH THIS MOTION:   $0.00

      D. OTHER POST-PETITION ATTORNEYS' FEES:   $0.00

      E. POST-PETITION INSPECTION FEES:   $0.00

      F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES $0.00

      G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:   $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:   $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)     COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT A.)

## DECLARATION AS TO BUSINESS RECORDS

I,_____Angela Kristen Viale_____, THE _____Bankruptcy Asset Manager_____ OF
SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the
Lodge Series III Trust, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746
UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS
ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY
PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE
TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY,
A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF
THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE
REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS
FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE
ORIGINAL DOCUMENTS.

EXECUTED AT _____Eureka, CA_____
ON THIS___17th___DAY OF___December___, 20__19__

NAME:
TITLE: Bankruptcy Asset Manager
MOVANT: SN Servicing, as servicer for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust
STREET ADDRESS: 323 5th St    Eureka, CA 95501
CITY, STATE AND ZIP CODE:

## DECLARATION

I,_____Angela Kristen Viale_____, THE_____Bankruptcy Asset Manager_____ OF
SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the
Lodge Series III Trust, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746
UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL
KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _____Eureka, CA_____
ON THIS___17th___DAY OF___December___, 20__19__

NAME:
TITLE: Bankruptcy Asset Manager
MOVANT: SN Servicing, as servicer for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust
STREET ADDRESS: 323 5th St
CITY, STATE AND ZIP CODE: Eureka, CA 95501

# EXHIBIT C

<table>
<tr><td colspan="4"><strong>Fill in this information to identify your case and this filing:</strong></td></tr>
<tr><td>Debtor 1</td><td colspan="3"><strong>Tina L. Gatterdam</strong></td></tr>
<tr><td></td><td>First Name</td><td>Middle Name</td><td>Last Name</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td><td></td><td></td></tr>
<tr><td></td><td>First Name</td><td>Middle Name</td><td>Last Name</td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:</td><td colspan="2">EASTERN DISTRICT OF NEW YORK</td></tr>
<tr><td>Case number</td><td colspan="3"></td></tr>
</table>

☐ Check if this is an
   amended filing

## Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
■ Yes.  Where is the property?

| 1.1 | | |
|---|---|---|

**25 Green Lane**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $347,763.00 | $347,763.00 |

**Levittown     NY     11756-0000**
City          State    ZIP Code

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nassau**
County

Other information you wish to add about this item, such as local property identification number:

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**owns jointly with ex husband**

☐ **Check if this is community property**
   (see instructions)

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................................=>**

| $347,763.00 |
|---|

**Part 2:   Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Tina L. Gatterdam**                                          Case number *(if known)*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Chrysler** |
|---|---|---|
| | Model: | **Town and Country** |
| | Year: | **2008** |
| | Approximate mileage: | **85000** |
| | Other information: | |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
   (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$3,500.00** | **$3,500.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................=>    **$3,500.00**

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

**Do you own or have any legal or equitable interest in any of the following items?**

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| **Household goods and furnishings** | **$5,000.00** |
|---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ■ No
   ☐ Yes. Describe.....

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

Debtor 1    **Tina L. Gatterdam**                                    Case number *(if known)* _____

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes.  Describe.....

   | Debtors wearing apparel | $1,200.00 |
   |---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes.  Describe.....

   | Miscellaneous Jewlery | $600.00 |
   |---|---|

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ■ No
   ☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes.  Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
   for Part 3. Write that number here ..............................................................................    | $6,800.00 |
   |---|

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes.......................................................................

**17. Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
   institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ■ Yes.......................                        Institution name:

   | 17.1. | **Checking** | **JP Morgan Chase Acct #1401** | $20.84 |
   |---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................                        Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ■ No
   ☐ Yes.  Give specific information about them...................
                        Name of entity:                                    % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No

Debtor 1    **Tina L. Gatterdam**                                         Case number *(if known)*

☐ Yes. Give specific information about them.
Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
Type of account:          Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ....................          Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............   Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............   Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
| --- | --- |

**28. Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.
Company name:                    Beneficiary:                    Surrender or refund

Debtor 1   **Tina L. Gatterdam**                                    Case number *(if known)* _____

                                                                                                    value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**...................................................................................................

    _____  **$20.84**

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.<br>If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes.  Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................

    _____  **$0.00**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Debtor 1    **Tina L. Gatterdam**

Case number *(if known)*

| Part 8: | List the Totals of Each Part of this Form |
| --- | --- |

| | | | |
| --- | --- | --- | --- |
| 55. | **Part 1: Total real estate, line 2** ............................................................................................................. | | $347,763.00 |
| 56. | **Part 2: Total vehicles, line 5** | $3,500.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $6,800.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $20.84 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** + | $0.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | $10,320.84 | Copy personal property total ▸ $10,320.84 |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62 | | $358,083.84 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy